# 24-982-cv

## United States Court of Appeals

### for the

## Second Circuit



Cavalier D. Knight

*Plaintiff-Appellant,*

-v-

CITY OF NEW YORK, and EDWARD A. CABAN, as the Statutorily Designated Handgun Licensing Officer and the POLICE COMMISSIONER OF THE CITY OF NEW YORK, and his successors in office,

*Defendants-Appellees*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF APPELLANT

Cavalier D. Knight, *Pro Se*
511 W 165th St Ste 627
New York, NY 10032-0634
T: +1 (646) 580-7801
E: info@cavalierknight.com

## <u>TABLE OF CONTENTS</u>

**1) TABLE OF AUTHORITIES**..................................................**v**

**2) JURISDICTIONAL STATEMENT** ...........................................**viii**

**3) STATEMENT OF THE ISSUES**.............................................**1**

(1) *NYSRPA., Inc. v. Bruen*, U.S. (2022) ......................................1

(2) Constitutional Question - 2A Protected Conduct ...................3

(3) Transcript: Mag. V. Figueredo ...............................................3

(4) Report & Recommendation - Mag. V. Figueredo .....................4

(5) Judicial Fiat..........................................................................5

(6) The City's Argument is Fallacious ..........................................7

(7) Transcript: The City ..............................................................7

(8) Third-Party Standing .............................................................8

(9) Transcript: The City ..............................................................8

(10) § 5-25 Handgun Purchase Authorizations ..............................9

(11) Protected 2nd Amendment Conduct.........................................9

(12) Regulated 2nd Amendment Conduct.........................................9

(13) OPINION: 5th and 14th Amendment Claims .........................10

(14) OPINION: 2nd Amend. | NYS CRL-CVR § 4 Claims.............13

(15) Restricted State Residence Premises License........................13

(16) State Residence Premises License Renewal ..........................14

(17) Director Nicole Berkovich - NYPD LD..................................15

(18) Three Things Needed on Appeal ...........................................17

(19) *Bruen's* Unqualified Command ............................................17

**4) FINDING OF FACT**.........................................................**18**

(20) Conclusion of Law................................................................18

(21) Federal Rules of Civil Procedure: Rule 52(a)(6)....................19

(22) *Bruen*: Prohibits Interest Balancing ....................................19

(23) The Analysis Under *Bruen* is a One-Step Test......................21

(24) Article III Injury-in-Fact ............................................ 30

(25) *Marbury v. Madison*, U.S. (1803) .............................. 31

(26) The Takings Clause and Due Process of Law ..................... 31

**5)      SUMMARY OF THE ARGUMENT .......................................... 32**

(27) The Plain Text Covers the Right to Acquire Arms ............... 34

(28) Right to Keep Arms Includes Right to Acquire ................... 35

(29) Discounting The Law ................................................ 37

(30) Misstating Key Facts .............................................. 39

(31) Making The Simple Difficult ...................................... 41

**6)      ARGUMENT ............................................................. 41**

(32) *U.S. v. Stambaugh*, U.S. (2023) ............................... 42

(33) *MSI, Inc. v. Moore*, (2023) .................................... 43

(34) *Bruen's*: Plain Text ............................................. 43

(35) Rights: Implicit in Enumerated Guarantees ...................... 44

(36) *Gibbons v. Ogden*, U.S. (1824) ................................. 45

(37) New York State Civil Rights Law - CVR § 4 ...................... 45

(38) Second Amendment ................................................ 45

(39) How to Apply SCOTUS *Bruen* Methodology ........................ 46

(40) Report & Recommendation - Mag. Figueredo, V ................... 47

(41) Transcript: The City ............................................. 48

(42) Second Amendment Violations .................................... 49

(43) *Shuttlesworth v. Birmingham*, U.S. (1969) ..................... 49

(44) *Murdock v. Pennsylvania*, U.S. (1943) ......................... 49

(45) *Schneider v. State*, U.S. (1939) .............................. 50

(46) *United States v. Stevens*, U.S. (2010) ........................ 50

(47) *Koons v. Platkin*, (2023) ...................................... 51

(48) 42 U.S.C. § 1983 ................................................. 51

(49) Report & Recommendation: Mag. Figueredo, V ................... 51

(50) Legal Standard - Rule 12(b)(1) ...............................................52

**7)**     **STANDARD OF REVIEW**..................................................**54**

(51) Article III Constitutional Standing Doctrine.......................54

(52) *U.S. v. Rahimi*, U.S. (2024) ...............................................55

(53) ORDER: Dist. Judge V. Caproni ..........................................56

(54) Error of Law: The Strongest Ground for Appeal ..................56

(55) *Conley v. Gibson*, U.S. (1957) ............................................57

**8)**     **CONCLUSION**.............................................................**57**

**9)**     **CERTIFICATE OF COMPLIANCE** .........................................**59**

**10)**     **CERTIFICATE OF SERVICE** ..................................................**60**

## 1) <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2013) ..............................................................................52

*Andrews v. State*, 50 Tenn,. 165, 178 (1871)............................................36

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 297 (1979) 11

*Barrows v. Jackson*, 346 U.S. 249 (1952) ................................................8

*Boland v. Bonta*, 662 F. Supp. 3d 1077, 1085 (C.D. Cal. 2023).............23

*Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016).................11

*Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 8 F.3d 607, 609 (7th Cir. 1993) ....................................................................................28

*Conley v. Gibson*, 355 U.S. 41 (1957) .....................................................57

*District of Columbia et al. v. Heller*, 554 U.S. 570 (2008) ...............23, 44

*Dred Scott v. Sandford*, 60 U.S. 393 (1857).............................................7

*Drummond v. Robinson Twp.*, 9 F.4th 217, 226–29 (3d Cir. 2021).......36

*Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ..............23, 35

*Gibbons v. Ogden*, 22 U.S. 1 (1824)........................................................45

*Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993)...........................57

*Horne v. Dep't of Agriculture*, 576 U.S. 351 (2015).................................32

*Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ....................................................................... 23, 35, 36

*Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015) ..................2

*Knick v. Township of Scott*, U.S. 139 S. Ct. 2162 (2019).......................16

*Kole v. Vill. of Norridge*, No. 11-cv-3871, 2017 WL 5128989, at *21 (N.D. III. Nov. 6, 2017) ................................................................37

*Koons v. Platkin*, Civil No. 22-7464 (2023) ............................................51

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)..........32

*Luis v. U.S.*, 578 U.S. 5, 26 (2016) ............................................ 23, 36, 44

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) .....................54

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) .....................53

*Marbury v. Madison*, 5 U.S. (2 Cranch) 137, 174, 176, (1803) ..............31

*Maryland Shall Issue, Inc. v. Moore*, No. 21-2017 (2023) .....................43

*McConnell v. Federal Election Com'n*, 540 U.S. 93, 252 (2003) ............37

*Minneapolis Star and Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582–83 (1983) ........................................................................ 36

*Murdock v. Pennsylvania*, 319 U.S. 105 (1943) ..................................... 49

*New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, 597 U.S., 142 S. Ct. 2111 (2022) ............................................................................................ 1

*New York State Rifle & Pistol Ass'n., Inc. v. City of New York*, 140 S. Ct. 1525, 1541 (2020) ................................................................................ 35

*Oakland Tactical Supply, LLC v. Howell Twp., Michigan*, No. 23- 1179, 2024 WL 2795571, at *3 (6th Cir. May 31, 2024) ................................ 35

*Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555 (1980) ............... 44

*Rigby v. Jennings*, 630 F. Supp. 3d 602, 615 (D. Del. Sept. 23, 2022) ...23

*Schneider v. State*, 308 U.S. 147 (1939) ................................................. 50

*Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969) .............................. 49

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) .................................. 54

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) ......... 11, 54

*Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) ............35

*U.S. v. Anderson*, 2023 WL 7531169, at *2 (N.D. Ill. Nov. 13, 2023) ....27

*U.S. v. Rahimi*, 602 U.S. ___ (2024) ...................................................... 56

*U.S. v. Stambaugh*, No. CR-22-218-PRW-2, (W.D. Okla. Jan. 12, 2023) ................................................................................................................. 42

*U.S. v. Stevens*, 559 U.S. 460 (2010) ...................................................... 50

*U.S. v. United States Gypsum Co.*, 438 U.S. 422 (1978) ........................ 19

*Vengalettore v. Cornel Univ.*, 36 F.4th 87, 112 (2d Cir. 2022) ................ 53

vi

# Statutes & Rules

## Constitutional Provisions

U.S. CONST. amend. I………………………………………22, 36, 37, 49

U.S. CONST. amend. II……………………………………....1-10, 12-15
17-25, 27-30, 32-36, 41-50, 52-54

U.S. CONST. amend. V……………………………………10, 15, 16, 31

U.S. CONST. amend. XIV…………………..6, 7, 10, 18, 27, 28, 31, 43, 47

## Federal

28 U.S.C. § 1331……………………………………………………viii

28 U.S.C. § 1343……………………………………………………viii

28 U.S.C. § 1391……………………………………………………viii

28 U.S.C. § 1651……………………………………………………viii

28 U.S.C. § 2201……………………………………………………viii

28 U.S.C. § 2202……………………………………………………viii

42 U.S.C. § 1983…………………………………………………viii, 51

42 U.S.C. § 1988……………………………………………..……viii

## State

N.Y.S. Penal Law § 265.00…………………………………………………11

N.Y.S. Penal Law § 265.10…………………………………………………viii

N.Y.S. Penal Law § 400.00…………………………………………………viii

N.Y.S. Civil Rights Law - CVR § 4………………………………4, 5, 10, 13
18, 45, 46

## Local

38 - R.C.N.Y. § 5-22 (a)(5)(7)(8)……………………………………..48

38 - R.C.N.Y. § 5-25 (a)……………………………………8, 13, 14, 47

38 - R.C.N.Y. § 5-25 (d)(4)(i)………………………………1, 4, 5, 9
    10, 12, 13, 15-18, 25, 27-30, 32 43

38 - R.C.N.Y. § 5-27 (a)(1)(i)……………………………………10

## Other Authorities

Smith, Mark, Text 1st, Historical Analogue Laws 2nd………………46

Smith, Mark, How to Apply SCOTUS *Bruen* Methodology (P I)……….46

Smith, Mark, How to Apply SCOTUS *Bruen* Methodology (P II)……...46

## 2) **JURISDICTIONAL STATEMENT**

**(a)** The District Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 2202, and 42 U.S.C. §§ 1983 and 1988. Venue lies in this Court under 28 U.S.C. § 1391;

**(b)** This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343;

**(c)** The Appellant seeks remedies under 28 U.S.C. §§§ 1651, 2201, 2202, and 42 U.S.C. §§ 1983 and 1988; as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of the rights, privileges or immunities secured by the U.S. Constitution. Venue lies in this Court under 28 U.S.C. 1391.

**(d)** This is an appeal from a final judgment of the District Court (CAPRONI, V), dated March 12, 2024 (the "Decision"). The notice of appeal was filed on April 10, 2024, and the appeal was timely filed, entered, and served via ACMS on July 30, 2024.

## **PARTIES**

**(a)** Appellant, Cavalier D. Knight, is a natural person, a U.S. citizen, and a resident of New York County, and on Behalf of All Others Similarly Situated;

**(b)** Appellee, the City of New York is a municipal corporate subdivision of the State of New York duly existing by reason of and under the laws of the State;

**(c)** Appellee, Edward A. Caban, is the NYPD Commissioner In that capacity, Commissioner Caban is the statutory handgun licensing officer for the City of New York. Commissioner Caban implements his licensing authority under N.Y. Penal Law § 265.10 through the issuance or denial of state Carry Licenses under N.Y. Penal Law § 400.00.

**3)** <u>**STATEMENT OF THE ISSUES**</u>

**1.** Knight would like to apologize to this Court as a **<u>pro se</u>** litigant on behalf of the NYC Law Department's Corporation Counsel and (850) attorneys who took an oath to uphold the U.S. Constitution. Yet refuse to advise the City that 38 - R.C.N.Y. § 5-25 (d)(4)(i) regulates the *acquisition possession* and public *carrying* of arms for self-defense striking at the **<u>core</u>** of the right. Every restriction the City places on "*conduct presumptively protected by the plain text of the 2nd Amendment*." Requires the City to satisfy the same **<u>burden of proof</u>** by producing laws analogous to the ratification of the 2nd Amendment in 1791. As a **<u>matter of law</u>**, the City has failed to satisfy its **<u>burden of proof</u>** under *Bruen*.

**(1)** ***<u>NYSRPA., Inc. v. Bruen</u>*****, U.S. (2022)**

**2.** *Bruen* is not an **<u>option</u>** the City "*must affirmatively prove that their firearms regulations are part of the historical tradition that delimits the outer bounds of the right to keep and bear arms*." This does not mean that **<u>judges</u>** bear the burden of becoming legal history researchers. The City must present a persuasive legal history to the court. "*Courts are thus entitled to decide a case based on the historical record compiled by the parties*." *See,* <u>**New York State Rifle & Pistol Ass'n, Inc. v. Bruen**</u>, 597 U.S., 142 S. Ct. 2111 (2022). **Ex 01 | Compl. p. 15 - ¶ 39**

**(a)** The NYPD License Division's (NYPD LD) primary mission directly involves the 2nd Amendment to the U.S. Constitution. Thus, all of their actions rules, administrative codes, and policies regulate "*conduct presumptively protected by the plain text of the 2nd Amendment*" and should be subjected to intense review and scrutiny. Knight filed this complaint to provide the City with options to discuss and provide potential ways to remove their unconstitutional regulations or suggest changes that promote and defend the 2nd Amendment without significant negative impact on the NYPD's mission to fight violent crime in the City.

**3.** The City's **motion to dismiss** is hinged on **(1)** question. Is Knight's *acquisition possession* and public *carrying* of arms conduct protected by the 2nd Amendment? Fortunately, for the *lower court*, this has already been decided by *Bruen*. The Supreme Court has **binding authority** over the *lower court* that faced a legal argument in this case. The Supreme Court already ruled on a similar or closely related issue involving the *text, history, and tradition* of 2nd Amendment issues in *Heller* and *Bruen*. Under **stare decisis**, the *lower court's* decision should be in alignment with the Supreme Court's holdings in *Heller* and *Bruen*. *See*, ***Kimble v. Marvel Entertainment, LLC***, 576 U.S. 446 (2015).

### (2)   Constitutional Question - 2A Protected Conduct

**4.**   Knight asked the <u>lower court</u> if the <u>acquisition possession</u> and public <u>carrying</u> of arms for self-defense is "<u>*conduct presumptively protected by the plain text of the 2nd Amendment*</u>." Why is he prohibited from transferring all **(4)** of his <u>*acquired*</u> arms from his **restricted** unconstitutional state Residence Premise License (state RPL) to his separate but not equal state Carry License (state CL)? The <u>lower court</u> averred that on the **merits** the holding in <u>*Bruen*</u> favored Knight:

### (3)   Transcript: Mag. V. Figueredo

**(a)**   "But I wanted to talk through that a bit, because my understanding of the landscape **post-*Bruen* is that there really is no dispute here that the conduct he's challenging would be at the core of what the Second Amendment protection is**. And my understanding of the test following *Bruen* is that it would be the government's burden to identify a historical analogue that would be, not the twin of whatever the city regulation, but something analogous to that dates back, you know, a regulation from the time of the founding or sometime near then. **But it struck me from the briefing, from the City's motion, that it almost was pointing to Knight, and it seemed to shift the burden on him to explain why the regulation was somehow infringing his rights**."

**(b)**   "And so, you know, we spent some time looking at cases to see if there was anything, like, factually similar, and we didn't find anything." **Ex 02 | p. 02: 19-25 | p. 03: 1-20**

**5.** After the _lower court_ averred on the record "_that the conduct he's challenging would be at the **'core'** of what the Second Amendment protection is_" (i.e., prohibiting the **confiscation** and **destruction** of Knight's arms). As a **matter of law**, the City produced no laws analogous to the ratification of the 2nd Amendment in 1791 to support its **motion to dismiss** thus failing to satisfy its **burden of proof** under _Bruen_.

### (4) Report & Recommendation - Mag. V. Figueredo

**(a)** Knight contends that 38 RCNY § 5-25 (d)(4)(i) violates the Second Amendment of the United States Constitution and the **New York State Civil Rights Law** § 4. See Compl. Fifth Cause of Action. Knight alleges that the city regulation restricts and substantially burdens an individual's right to keep and bear arms and is thus unconstitutional on its face and as applied to Knight and other law-abiding citizens. _Id_. ¶¶ 53-55. As explained below, <u>Knight has not pled a plausible violation of federal or state law</u>. **Ex 03 | p. 08 - ¶ 3**

**6.** Mag. Judge V. Figueredo averred within the transcript "_that there really is no dispute here that the conduct he's challenging would be at the **'core'** of what the Second Amendment protection is_" under _Bruen_.

**7.** Then she contradicted her prior determination and made a **clear error** on the **face of the record** within her Report & Recommendation to Dist. Judge V. Caproni. Who in turn chose to use **judicial fiat** to ignore the **binding precedent** set in _Bruen_ to make a **fallacious judgment** that led to a **clearly erroneous** decision.

**(5)** <u>**Judicial Fiat**</u>

**8.** The <u>*acquisition possession*</u> and public <u>*carrying*</u> of arms for self-defense is "<u>*conduct presumptively protected by the plain text of the 2nd*</u> <u>*Amendment*</u>." Knight intends to transfer all **(4)** of his arms from his state RPL to his state CL but is prohibited from doing so by 38 - R.C.N.Y. § 5-25 (d)(4)(i). The **(2)** arms Knight cannot transfer must be **confiscated**.

> **(a)** <u>**Justice Thomas:**</u> In keeping with <u>*Heller*</u>, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply <u>*posit*</u> that the regulation promotes an important interest, <u>*Bruen*</u>, 142 S.Ct. at 2126.

**9.** If the Supreme Court opined that 2nd Amendment restrictions require laws analogous to the ratification of the 2nd Amendment in 1791 to support them. How could the <u>*lower court*</u> aver that Knight **lacked** **standing** when his complaint seeks to prohibit the **confiscation** and **destruction** of the arms he <u>*acquired*</u> and <u>*possesses*</u> to publicly <u>*carry*</u> for self-defense which is "<u>*conduct presumptively protected by the plain text of*</u> <u>*the 2nd Amendment*</u>." As a **matter of law**, why were Knight's 2nd Amendment and **New York State Civil Rights Law** - CVR § 4 claims **DISMISSED** with **prejudice**? When the City produced no analogous laws to support their **motion to dismiss** as required by <u>*Bruen*</u>?

**(a)** The City cannot issue a state RPL that prohibits what the 2nd Amendment allows publicly *carrying* arms for self-defense. This decision reinforces decades of systemic violations of the 2nd Amendment right to publicly *carry* arms for self-defense. The *lower court* ruled that no laws analogous to the ratification of the 2nd Amendment in 1791 were required to support the City's unconstitutional restrictions.

**(b)** Therefore the City can promulgate rules with impunity that *facially and as-applied* violate the 2nd and 14th Amendment rights of **8.5 million** citizens in the City. By issuing unconstitutional state RPLs that are "*a restricted type of license that 'de facto' effectively prevent law-abiding residents from carrying a handgun for [self-defense]*" striking at the **core** of the right.

**10.** The *lower court* cannot use **judicial fiat** to sever Knight's *acquisition possession* and public *carrying* of arms from the "*conduct presumptively protected by the plain text of the 2nd Amendment*." To protect **public policy** and shield the City from satisfying its **burden of proof** under the holdings in *Heller* and *Bruen*.

**11.** Knight provided Supreme Court precedent that a state RPL is "***a restricted type of license** that **'de facto'** effectively prevents law-abiding residents from carrying a handgun for [self-defense]*." The *lower court* ignored *Bruen* and averred that Knight could remedy this **injury-in-fact** by simply renewing his unconstitutional state RPL although it **de facto** "*confines the right to 'bear' arms to the home nullifying half of the 2nd Amendment's operative protections*." This is a **logical fallacy**.

**(6)**    **The City's Argument is Fallacious**

**12.**    The City avers that Knight must prove that his _acquisition possession_ and public _carrying_ of arms for self-defense is conduct protected by the plain text of the 2nd Amendment. This is an **error of law** and this **error is fatal**. "**Never interrupt your enemy while he's making a mistake**" - _Napoleon Bonaparte._

**(7)**    **Transcript: The City**

**(a)**    And our argument is directed at the first step of the _Bruen_ test. **You're correct that if plaintiff satisfies his pleading burden at the first step, then it would be up to the City to identify historical analogues**. But _Bruen_ also requires a first step. **And at that first step, the plaintiff must identify his or her proposed course of conduct** and show through the text of the Second Amendment that that proposed course of conduct finds protection in the text of the Second Amendment.

**(b)**    **And our argument is that this is not core Second Amendment conduct, and it doesn't implicate the Second Amendment**. **[Ex 02] | p. 04 - 09-21**

**13.**    Knight's constitutional rights are a birthright. The City's implication that Knight an African-American has to provide a **burden of proof** to validate his 2nd Amendment rights is **discriminatory**. And _facially and as-applied_ violates his 2nd and 14th Amendment rights which is as _repugnant_ to the Constitution as the unconstitutional violations faced by _Dred Scott_. _See,_ **_Dred Scott v. Sandford_**, 60 U.S. 393 (1857).

**(8)** **Third-Party Standing**

**14.** First-time applicants for a state CL will discover that after *acquiring* **(2)** arms, *acquiring* an additional arm will require applying for a state RPL. This is a "*restricted type of license*" that **de facto** prohibits *carrying* arms. Because it "*confines the right to 'bear' arms to the home nullifying half of the 2nd Amendment's operative protections*" which strikes at the **core** of the right. *See*, **_Barrows v. Jackson_**, 346 U.S. 249 (1952).

> **(a)** **Justice Thomas (_Bruen_):** "In keeping with _Heller_, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply _posit_ that the regulation promotes an important interest, _Bruen_, 142 S.Ct. at 2126. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

**(9)** **Transcript: The City**

**(a)** Our regulation doesn't regulate the **acquisition** of the guns, and it doesn't regulate the **possession** or the **carrying**. **[Ex 02] | p. 13 - 09-11**

**15.** 38 - R.C.N.Y. § 5-25 (a) states; "**The following are the rules concerning handgun acquisition**." This is a **finding of fact**. **Ex 04**

**(10)** **§ 5-25 Handgun Purchase Authorizations**

**I.** **(a)** The licensee may not obtain a handgun without prior _written authorization_ from the Division Head, License Division. This _authorization_ shall be provided in the nature of a "_Handgun Purchase Authorization Form_." **The following are the rules concerning handgun acquisition**.

**II.** **(d)** Number of handguns allowed on a handgun license;

**III.** **(4)** The number of handguns allowed under each type of handgun license is listed below. Requests for additional handguns shall be reviewed on an individual basis.

**IV.** **(i)** **Carry** and Special Carry - **Two handguns**. The Division Head of the License Division may, in her/his **discretion** and in accordance with applicable law, **limit** the number of handguns that appear on the carry handgun license. **Compl. ¶¶ 02, 17, 23 (a), 27, 28, 29, 34, 36, 37, 38, 42, 45, 47, 49, 53, 54, 55, 57, 58**

**(11)** **Protected 2ⁿᵈ Amendment Conduct**

**(a)** The _acquisition possession_ and public _carrying_ of arms for self-defense is "_conduct presumptively protected by the plain text of the 2ⁿᵈ Amendment_."

**(12)** **Regulated 2ⁿᵈ Amendment Conduct**

**(a)** Knight asked the _lower court_ how could he cancel his unconstitutional state RPL and transfer all **(4)** of his arms to his state CL. When 38 - R.C.N.Y. § 5-25 (d)(4)(i) only allows for the transfer of **(2)** arms from a state RPL to a state CL.

**(b)** The **(2)** arms that remain on Knight's state RPL must be **confiscated** by the City for **destruction**. Because a state CL **de facto** prohibits the _acquisition possession_ and public _carrying_ of more than **(2)** arms for self-defense into _perpetuity_.

~ **9** ~

**16.** The _lower court_ failed to provide _an opinion explaining its rationale_ for **DISMISSING** Knight's "_well-pleaded factual allegations_" under the 5th and 14th Amendments and **DISMISSING** his 2nd Amendment, **New York State Civil Rights Law** - CVR § 4, claims with **prejudice**. When prohibiting Knight's _acquisition possession_ and public _carrying_ of arms for self-defense (i.e., "_conduct presumptively protected by the plain text of the 2nd Amendment_") strikes at the **core** of the right.

### (13) OPINION: 5th and 14th Amendment Claims

**(a)** WHEREAS the R&R recommended dismissing the Complaint **(a)** as to the Fifth and Fourteenth amendment claims for **lack of standing** because the claims are premised on the possibility that the police might some day confiscate Plaintiff's handguns, **Ex 05 | p. 02 - ¶ 01**

**17.** To state that Knight's 5th and 14th Amendment claims **lack standing** because the claims are premised on the possibility of confiscation is **disingenuous**. Knight originally possessed a state RPL. After _Bruen_, he received his state CL and **intends** to cancel his state RPL after transferring all **(4)** of his arms to his state CL. 38 - R.C.N.Y. § 5-25 (d)(4)(i) prohibits transferring more than **(2)** arms from a state RPL to a state CL. The **(2)** arms that remain on Knight's state RPL must be **confiscated** for **destruction** this is not speculation. See, 38 - R.C.N.Y. § 5-27 (a)(1)(i) - Cancellation of License - **LINK**.

**18.** Therefore pre-enforcement challenges to criminal statutes are "*cognizable under Article III*" *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). The Supreme Court has made it clear that a plaintiff suffers an **injury-in-fact** sufficient to establish standing when he or she faces "*threatened enforcement of a law*" that is "*sufficiently imminent*." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) at 158-59. When challenging a law before its enforcement, "*a plaintiff satisfies the **injury-in-fact** requirement where he alleges 'an **intention** to engage in a course of conduct arguably affected with a constitutional interest but proscribed by a statute, and there exists a credible threat of prosecution thereunder*.'" *Id.* (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 297 (1979)).

**19.** After Knight cancels his unconstitutional state RPL if he continues to *possess* the **(2)** arms that could not be transferred to his state CL. He would violate **NYS Penal Law - Article § 265.00 - Criminal Possession**. Knight's mere *possession* of his lawfully *acquired* arms would cause **irreparable harm** (i.e., a felony charge and/or arrest) which is an Article III **injury-in-fact**. **Compl. p. 06 - ¶ 11-13**

**20.**　The taking of Knight's personal property (i.e., arms) without compensation is an Article III **injury-in-fact** causing Knight **irreparable harm**. The right to "*keep*" arms implies the right to *acquire* arms. After all, "*keep*" means to possess or "*have weapons.*" *Heller*, 554 U.S. 570, 582 (2008). 38 - R.C.N.Y. § 5-25 (d)(4)(i) prevents citizens with a state CL from taking *possession* of more than **(2)** arms. Because the 2nd Amendment's plain text covers Knight's *acquisition* and *possession* of *bearable* arms "*the Constitution presumptively protects that conduct.*" *Bruen*, 597 U.S. at 24 (emphasis added).

**21.**　38 - R.C.N.Y. § 5-25 (d)(4)(i) violates the 2nd Amendment by prohibiting the *acquisition, possession*, and public *carrying* of more than **(2)** arms for self-defense. **1)** The holding in *Bruen* prohibits issuing an unconstitutional state RPL because this is a "*restricted type of license*" that **de facto** prohibits *carrying* arms. Because it "*confines the right to 'bear' arms to the home nullifying half of the 2nd Amendment's operative protections*" which strikes at the **core** of the right. **2)** Issuing a separate but not equal **restricted** state CL that prohibits *acquiring* and *possessing* more than **(2)** arms to *carry* publicly for self-defense into *perpetuity* serves no lawful purpose and strikes at the **core** of the right.

**(14)  OPINION: 2nd Amend. | NYS CRL-CVR § 4 Claims**

**(a)**  WHEREAS the R&R recommended dismissing the Complaint **(b)** as to the claims under the Second Amendment and Section 4 **because the NYPD Rule does not infringe on the core conduct protected by federal and state law**, **[Ex 05] | p. 02 - ¶ 01**

**22.**  How could 38 - R.C.N.Y. § 5-25 (d)(4)(i) not infringe on **core** 2nd Amendment conduct when 38 - R.C.N.Y. § 5-25 (a) states "**The following are the rules concerning handgun acquisition** and the *acquisition possession* and public *carrying* of arms for self-defense is "*conduct presumptively protected by the plain of the 2nd Amendment*."

**23.**  38 - R.C.N.Y. § 5-25 (d)(4)(i) regulates "*the number of handguns allowed on a handgun license*." Prohibits the transfer of more than **(2)** arms from a state RPL to a state CL and prohibits the *acquisition possession* and public *carrying* of more than **(2)** arms. 38 - R.C.N.Y. § 5-25 (d)(4)(i) is the **epitome of restrictions** that require laws analogous to the ratification of the 2nd Amendment in 1791 under *Bruen*.

**(15)  Restricted State Residence Premises License**

**(a)**  This is a **restricted type of license**. It is issued for your residence or business. **The Licensee may possess a handgun ONLY on the premises of the address indicated on the front of the license**. Licensees may also transport their handguns and ammunition in separate locked containers, directly to and from an authorized range or hunting location. **Ex 06 - Link**

~ 13 ~

**24.** The *lower court* ignored the **finding of facts** that **1)** 38 R.C.N.Y. § 5-25 (a) states "**The following are the rules concerning handgun acquisition**" and **2)** a state RPL is a "*restricted type of license*" that **de facto** prohibits *carrying* any arms. Because it "*confines the right to 'bear' arms to the home nullifying half of the 2ⁿᵈ Amendment's operative protections*" in violation of the holding in *Bruen*.

> **(a)** **Justice Thomas (*Bruen*):** "This definition of "**bear**" naturally encompasses public "**carry**." Most gun owners do not wear a holstered pistol at their hip in their bedroom or while sitting at the dinner table. Although individuals often "**keep**" firearms in their home, at the ready for self-defense, most do not "**bear**" them in the home beyond moments of actual confrontation. **To confine the right to "bear" arms to the home would nullify half of the Second Amendment's operative protections**."

> **(16)** **State Residence Premises License Renewal**

**25.** On September 14, 2022, Knight contacted Director Nicole Berkovich of the NYPD LD via e-mail to inquire as to why he would need to pay to renew his state RPL after receiving his state CL. *Bruen* did not state that a licensee who possesses more than **(2)** arms can only *bear* **(2)** arms outside of the home on a state CL while being required to renew and/or apply for a state RPL that **de facto** "*confines the right to 'bear' arms to the home nullifying half of the 2ⁿᵈ Amendment's operative protections*" in violation of the holding in *Bruen*.

**26.** On November 02, 2022, Knight received a response from Director Berkovich that confirmed the cancelation of his state CL would result in the **confiscation** of his arms under 38 - R.C.N.Y. § 5-25 (d)(4)(i). In violation of the **Takings** and **Due Process of Law Clauses** of the 5th Amendment. **Ex 07 | Compl. pp. 11-13 - ¶ 28-32**

> **(17)** **Director Nicole Berkovich - NYPD LD**
>
> **(a)** **Premise Licenses continue to exist**. Your Carry application is being reviewed as previously discussed and an outcome should be rendered within the next few weeks. If you wish to maintain both licenses you should submit your premise renewal. If you wish to maintain only a Carry license, **I suggest that you wait to begin your renewal until you receive a decision on the Carry, so that you do not pay for a license you do not want**.
>
> **(b)** **Your Premise license expires on 12/26/2022**, and as long as you submit your renewal application before it expires the license remains valid while the renewal is processed.
>
> **(c)** **I will note that NYC rules limit Carry licenses to 2 firearms, so if you want to maintain more than 2 firearms you would need to maintain the Premise License for any additional firearms you wanted to possess/purchase**.

**27.** 38 - R.C.N.Y. § 5-25 (d)(4)(i) only allows citizens to *acquire* *possess* and publicly *carry* for self-defense no more than **(2)** arms on a state CL. While unconstitutionally forcing citizens to apply for an additional state RPL to *acquire* and *possess* a **(3rd)** arm in violation of the 2nd Amendment right to publicly "*carry*" arms for self-defense.

**28.** 38 - R.C.N.Y. § 5-25 (d)(4)(i) also violates the **Takings** and **Due Process of Law Clauses** of the 5th Amendment by **confiscating** for **destruction** arms that were lawfully *acquired* and *possessed* by Knight. Constituting a physical appropriation of Knight's personal property without just compensation is *per se* unconstitutional.

**29.** A law that deprives an owner of private property without a permissible justification violates the **Due Process Clause** regardless of whether it violates the **Takings Clause**. It makes it a crime for Knight to continue *possessing* arms that he lawfully *acquired*. Forcing Knight, who would otherwise keep his lawful property to instead physically surrender his property (i.e., arms) without just compensation, is a *per se* unconstitutional taking.

> **(a)** In an opinion written by Chief Justice John Roberts, the court held that the state-litigation requirement of Williamson County is overruled. The court reasoned the **Takings Clause** doesn't say: "Nor shall private property be taken for public use, without an available procedure that will result in compensation." "If a local government takes private property without paying for it, that government has violated the 5th Amendment just as the **Takings Clause** says without regard to subsequent state court proceedings. And the property owner may sue the government at that time in federal court for the 'deprivation' of a right 'secured by the Constitution.'" *Knick v. Township of Scott*, U.S. 139 S. Ct. 2162 (2019).

**(18)  Three Things Needed on Appeal**

**(a)  What's the rule?** [Stare decisis, _Heller_ and _Bruen_ explained, the "_historical understanding_" of the 2nd Amendment as informed by the existence (or absence) of analogous regulations going back to the founding era in 1791.

**(b)  Who broke it?** [The _lower court_].

**(c)  And did it make a difference?** [The _lower court_ unlawfully shifted the **burden of proof** from the City to Knight. Which _facially and as-applied_ violates the holding in _Bruen_.

**(19)  _Bruen's_ Unqualified Command**

**(a)**  In any event, _Bruen_ asks a strictly textual question with only one answer: the 2nd Amendment's plain text covers _carrying_ arms. Because the Constitution presumptively protects _carrying_ arms, a state RPL's constitutionality hinges on whether regulations prohibiting publicly _carrying_ arms for self-defense (i.e., [38 - R.C.N.Y. § 5-25 (d)(4)(i)]) are consistent with the Nation's historical tradition of firearm regulation.

**(b)**  Fortunately, the plain text analysis is not difficult because the Supreme Court has already defined the key terms of the guarantee that "_the right of the people to keep and bear arms, shall not be infringed_." Here are **(4)** of those definitions:

**(1)**  "The people" facially means "all Americans," _Heller_.

**(2)**  "Arms" facially means "all instruments that constitute bearable arms."

**(3)**  "Keep Arms" facially means "have weapons," _Heller_.

**(4)**  "Shall not be infringed" facially means that the right conferred by the 2nd Amendment is an "unqualified command," _Bruen_.

**4)**    <u>**FINDING OF FACT**</u>

**(a)**    The <u>*burden*</u> is not on the <u>*lower court*</u> to produce historically analogous laws from the founding era in 1791. The **burden of proof** is on the City to produce historically analogous laws to support 38 - R.C.N.Y. § 5-25 (d)(4)(i). But this is a probability of zero $[P(E) = 0]$ and is <u>*unsurmountable*</u>.

**(b)**    When the 2nd Amendment was ratified in 1791 there were no police departments, state RPLs, state CLs, or notarized letters required to swap arms from a state RPL to a state CL, and no limits on the quantity of arms citizens could <u>*acquire, possess*</u>, and publicly <u>*carry*</u> for self-defense. These are <u>**findings of fact**</u>.

**(c)**    Knight filed a complaint to prohibit the City from **confiscating** the **(2)** arms that 38 - R.C.N.Y. § 5-25 (d)(4)(i) prohibits him from transferring from his state RPL to his state CL striking at the <u>**core**</u> of the 2nd Amendment right.

**(20)**    <u>**Conclusion of Law**</u>

**(a)**    Under the holding in <u>*Bruen*</u>, all 2nd Amendment restrictions must be supported by analogous laws from the founding era in 1791. If the City cannot make this demonstration, the restrictions 38 - R.C.N.Y. § 5-25 (d)(4)(i) are **unconstitutional**, full stop. No interest-balancing or levels-of-scrutiny analysis **can or should** be conducted.

**(b)**    How could the <u>*lower court*</u> **DISMISS** Knight's 2nd Amendment and <u>**New York State Civil Rights Law**</u> - CVR § 4 claims with **prejudice**? When the City provided no laws analogous to the ratification of the 2nd Amendment in 1791. To support its **motion to dismiss** Knight's <u>*well-pleaded factual allegations*</u> about the violations of citizens' 2nd and 14th Amendment rights.

**(c)**    As a <u>**matter of law**</u>, the City's **ipse dixit** failed to carry its **burden of proof** under the holding in <u>*Bruen*</u>. Therefore a <u>**conclusion of law**</u> would aver that the ruling is <u>**clearly erroneous**</u> and should be **VACATED** and **REVERSED**.

**(21)  Federal Rules of Civil Procedure: Rule 52(a)(6)**

**(a)**  Rule 52(a)(6) of the FRCP requires that the _lower court's_ **finding of fact** not be set aside unless **clearly erroneous** in an action tried on the facts without a jury.

**(b)**  The **clearly erroneous** standard is applied to **issues of fact**. Deference is paid to the _lower court's_ findings. Generally, this Court must have a definite and firm conviction that a mistake has been made by the _lower court_. The burden is on Knight to identify the alleged erroneous factual finding (i.e., failing to utilize _Bruen_) and to overcome the presumption of correctness applied to all _lower court_ decisions. _See_, _U.S. v. United States Gypsum Co_., 438 U.S. 422 (1978).

**(c)**  Applying _Bruen's_ test in 2nd Amendment cases is not an **option** to be **disregarded** by the _lower court_ in favor of the City's **public policy** agenda. The _acquisition_ of arms is protected 2nd Amendment conduct. Knight has _acquired_ and _possesses_ arms to publicly _carry_ for self-defense and **intends** to prohibit their **confiscation** and **destruction**. The City produced no laws analogous to the ratification of the 2nd Amendment in 1791 to support prohibiting the transfer of more than **(2)** of Knight's arms from his state RPL to his state CL. Or any laws mandating the **confiscation** and **destruction** of the **(2)** arms that Knight cannot transfer from his state RPL to his state CL which strikes at the **core** of the right.

**(22)  _Bruen_: Prohibits Interest Balancing**

**(a)  Justice Thomas (_Bruen_):** Many Courts of Appeals have coalesced around a "_two-step_" framework for analyzing 2nd Amendment challenges that combines history with means-end scrutiny, Justice Thomas notes in the _Bruen_ majority opinion. "_Today, we decline to adopt that two-part approach_."

**(a)** "Moreover, *Heller* and *McDonald* expressly rejected the application of any 'judge-empowering "interest-balancing inquiry" that, "asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests."' *Heller*, 554 U.S., at 634 (quoting *id.*, at 689–690 (BREYER, J., dissenting)); *see*, also *McDonald*, 561 U.S., at 790–791 (plurality opinion) (the Second Amendment does not permit let alone require 'judges to assess the costs and benefits of firearms restrictions' under means-end scrutiny). We declined to engage in means-end scrutiny because '[t]he very enumeration of the right takes out of the hands of government even the Third Branch of Government the power to decide on a case-by-case basis whether the right is really worth insisting upon.' *Heller*, 554 U.S., at 634. We then concluded: '**A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all**.' *Ibid.*"

30.　The *lower court* ignored *Bruen's* **infallible** self-executing **conclusion of law**, that 2ⁿᵈ Amendment restrictions **(minus)** analogous laws from the founding era in 1791 **(equal)** *facially* unconstitutional regulations as a **matter of law**. The *lower court* used **judicial fiat** to sever Knight's *acquisition possession* and public *carrying* of arms for self-defense from the "*conduct presumptively protected by the plain text of the 2ⁿᵈ Amendment*" to support a **clearly erroneous** decision.

31.　In most cases, the courts bend their knee to precedent whenever possible. However, to follow precedent, precedent must first be set. This is the lot that often falls to the Supreme Court.

### (23)  <u>The Analysis Under *Bruen* is a One-Step Test</u>

**32.**  The *lower court* mischaracterized *Bruen* as requiring a "*two-step*" analysis. Unfortunately, the *lower court* and reviewing courts have been similarly mischaracterizing the breadth and application of *Bruen's* analysis, to the point that the myth of a "*two-step*" analysis has become pervasive, including in the *lower court*.

**33.**  By its plain language, *Bruen* eschews a "*two-step*" test and calls for a "*one-step*" test: "*Despite the popularity of th[e] 'two-step' approach, it is one step too many*" *Bruen*, 597 U.S. at 19. It would make little sense for the Supreme Court to expressly abrogate a step as unnecessary only to then reinsert a substitute.

**34.**  Because the *lower court* fundamentally misunderstood the approach *Bruen* requires, this case provides an excellent opportunity for this Court to clarify that the simple requirement that a 2nd Amendment case *implicates* the right to *keep and bear* arms is not a significant analytical "*step*," and thus, as the *lower court* and other courts have transmuted it, an imposing hurdle.

**35.** Rather, it is a simple **qualifier**. This is critical because the _lower court_ has cynically transformed this manufactured "_first step_" into a barrier relieving the City of its burden of the historical analysis altogether, unlawfully shifting _Bruen's_ **burden of proof** to Knight and reinserting the _interest balancing_ derided and forbade by _Bruen_ under the guise of a purported "_plain text_" analysis that allowed the _lower court_ to treat Knight's obvious arms-related questions as though they are not.

**36.** For there to be a viable 2nd Amendment challenge, the right to _keep and bear_ arms must at least be implicated. Just as a 1st Amendment free speech case must involve speech, a 2nd Amendment case involves the peaceable use or ownership of arms. But this should be no more than a **qualifier**, not an independent "_step_" requiring in-depth analysis that allows the City to dodge its _burden_ of historical scrutiny.

**37.** "_Plain text_" analyses often require "_historical analysis_" anyway. It is apparent that except in cases where the right to _keep and bear_ arms are not related at all, to determine the 2nd Amendment's applicability to the conduct at issue, historical review is required even to discern the meaning of the text in the first place, further supporting that _Bruen_ is a "_one-step_" historical test.

**38.** "*Implicating*" the 2nd Amendment may be direct or indirect because "*[t]he 2nd Amend. also protects attendant rights that make the underlying right to bear arms meaningful.*" *Boland v. Bonta*, 662 F. Supp. 3d 1077, 1085 (C.D. Cal. 2023) ([citing *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014)]); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011); *Rigby v. Jennings*, 630 F. Supp. 3d 602, 615 (D. Del. Sept. 23, 2022); *see Luis v. U.S.* 578 U.S. 5, 26 (2016) (Thomas, J., concurring). ("*Constitutional rights implicitly protect those closely related acts necessary to their exercise*"). Otherwise, the City could impose a historically strict sales restriction that effectively bans the sales of arms and cynically claim that it does not implicate the 2nd Amendment because the literal "*keeping and bearing*" of arms is unaffected. Any law that in any way affects the right of an American to peaceably *acquire, possess, use, or carry* arms must be backed by historical tradition; that is *Bruen's* fundamental holding. It is not for any *lower court* to ask whether aspects of the right are "*really worth insisting upon,*" *Heller*, 554 U.S. at 634. The *lower court* should be corrected on this point, and the precedent in *Bruen* clarified. *See, District of Columbia et al. v. Heller*, 554 U.S. 570 (2008). **Compl. p. 16 - ¶ 41**

**39.** Any restrictions on Knight's arms must comport with historical tradition. The text of the 2ⁿᵈ Amendment guarantees individuals the right to "*keep and bear*" Arms. U.S. Const. amend. II. That, of course, includes the right to use them "*for offensive or defensive action*" *Bruen*, 597 U.S. at 32. It is not even a close question whether handguns are "*arms*" because they are indisputable "*weapon[s] of offence*" that a person "*takes into his hands, or useth in wrath to cast at or strike another*" *Heller*, 554 U.S. at 581 (citing Founding-era dictionaries).

**40.** Regardless of the ultimate constitutionality of arms bans or restrictions on the use of such arms, it would be fundamentally unserious to assert that Knight's arms are not even presumptively protected by the plain text of the 2ⁿᵈ Amendment. So as a **matter of law**, how could the City's **motion to dismiss** survive *Bruen's* "*one-step*" test? This decision is **clearly erroneous** on its *face*.

**41.** To be sure, a ban on arms not "*in common use*" might be "*consistent with the Nation's historical tradition of firearm regulation*" and thus survive *Bruen's* historical inquiry, *Bruen* 597 U.S. at 24. But that is irrelevant in determining whether an item is an arm within the 2ⁿᵈ Amendment's text that is deserving of that historical inquiry.

**42.** Indeed, its text reaches all arms, dangerous, unusual, or otherwise, because we begin from the premise that the 2nd Amendment "*extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding*." *Id*. at 28 (emphasis added) (quoting *Heller*, 554 U.S. at 582). The Supreme Court has stated the same principle in several different ways, and all *lower courts* need to accept the message and conduct a full historical analysis to determine the constitutionality of any arms restrictions, including 38 - R.C.N.Y. § 5-25 (d)(4)(i).

**43.** The City, having had its chance to present its historical analogues below and **failing to do so**, should not be given a second bite at the apple. That is probably correct, and thus the case would end there. However, if this Court is not inclined to rule that way, then a remand to the *lower court* to conduct a full historical analysis would be the next best option. In short, as numerous courts have correctly observed in applying *Bruen*, the City must identify a historical analogue that curtails the right to peaceably *carry* handguns for self-defense to a comparable degree, with a comparable severity, and comparable blanket enforcement.

44.  The *Bruen* Court provides two avenues of historical inquiry. The first avenue of inquiry is a "*straightforward historical inquiry*," which applies when "*a challenged regulation addresses a general societal problem that has persisted since the 18th century.*" *Id*. at 2131. Under this inquiry, courts must identify a "*distinctly similar historical regulation addressing that problem.*" *Id*. The second avenue of inquiry is by "*analogy.*" *Id*. at 2132.

45.  Because "*[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868,*" there is not always straightforward correspondence, and unprecedented societal concerns or dramatic technological changes may require a "*more nuanced approach.*" *Id*. Under these circumstances, the *Bruen* Court directed *lower courts* to consider "*historical analogies*" to the challenged regulation to determine whether the regulation sufficiently resembles historically acceptable restrictions. *Id*. Evaluating whether a historical regulation is a proper analogue for a "*distinctly modern*" firearm regulation requires a determination of whether the two regulations are "*relevantly similar.*" *Id*.

**46.** *Bruen* directed *lower courts* to centrally consider "*whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified*." *Id.* at 2133. The Court emphasized that "*analogical reasoning under the 2nd Amendment is neither a regulatory straitjacket nor a regulatory blank check*." *Id.* It requires a "*well-established and representative historical analogue, not a historical twin*." *Id.* (Emphasis in original). *See*, **U.S. v. Anderson**, 2023 WL 7531169, at *2 (N.D. Ill. Nov. 13, 2023).

**47.** There is **no dispute** in this case that the straightforward historical inquiry does not apply as there were no laws or regulations (i.e., [38 - R.C.N.Y. § 5-25 (d)(4)(i)]) categorically restricting citizens from *acquiring possessing*, or publicly *carrying* more than **(2)** arms for self-defense at the time of the Founding or ratification of the 2nd or 14th Amendments.

**48.** This Court should find that any references cited by the City are clearly dicta, which this Court is not bound to follow. *See, Cole Energy Dev. Co. v. Ingersoll-Rand Co*., 8 F.3d 607, 609 (7th Cir. 1993). It is evident that Knight is included in "*the people*" covered by the 2nd Amendment, and that his conduct is presumptively protected. As such, this Court should consider whether 38 - R.C.N.Y. § 5-25 (d)(4)(i) is consistent with the Nation's historical tradition of arms regulation. Under *Bruen*, when "*distinctly modern*" regulations are at issue, the City must offer historical regulation that is "*relevantly similar*" *Bruen*, 142 S. Ct. at 2132. The court must then determine whether the proffered analogues "*impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified*" as the burden imposed by 38 - R.C.N.Y. § 5-25 (d)(4)(i) *Id*. at 2133 (emphasis added).

**49.** Knight challenges 38 - R.C.N.Y. § 5-25 (d)(4)(i) on 2nd Amendment grounds, which this Court panel should review **de novo** rather than for *plain error* because Knight had good cause for not raising the claims in the *lower court* when *Bruen* foreclosed the argument. This Court panel should hold that 38 - R.C.N.Y. § 5-25 (d)(4)(i) violates the 2nd and 14th Amendments *facially and as-applied* to Knight and citizens.

**50.**   If the holding in _Bruen_ requires historical analogous laws from the founding era in 1791 to satisfy the City's **burden of proof** to adjudicate this 2nd Amendment case. The decision from the _lower court_ is **clearly erroneous**. Applying _Bruen's_ text-and-history framework, this Court panel should conclude that **1)** weapons, are "_arms_" within the meaning of the 2nd Amendment's text, and citizens' "_proposed course of conduct of acquiring possessing and carrying [a] handgun[] publicly for self-defense_" falls within the 2nd Amendment's plain language. And Knight is part of "_the people_" whom the 2nd Amendment protects because he is an African-American and **2)** under _Bruen_ the City failed to prove that 38 - R.C.N.Y. § 5-25 (d)(4)(i)'s categorical prohibitions, _facially and as-applied_ to Knight, "_are part of the historic tradition that delimits the outer bounds of the 2nd Amendment right,_" _Bruen_, 597 U.S. at 19.

**51.**   The City put forward no "_well-established and representative historical analogues_" that "_impose[d] a comparable burden on the right of armed self-defense_" that was "_comparably justified_" as compared to 38 - R.C.N.Y. § 5-25 (d)(4)(i)'s sweeping, no-exception, prohibition on _acquiring possessing_ and publicly _carrying_ more than **(2)** arms for self-defense into _perpetuity_.

**(a)** The Supreme Court already interpreted the "*conduct presumptively protected by the plain text of the 2nd Amendment*" in *Heller* and *Bruen*. It was an **error of law** for the *lower court* to ignore the holding in *Bruen* that publicly *carrying* arms for self-defense is "*conduct presumptively protected by the plain text of the 2nd Amendment*."

**(b)** **Stare decisis** required the *lower court* to instruct the City to produce historical analogous laws from the founding era in 1791 to satisfy its **burden of proof**. As a **matter of law**, the City failed to satisfy its **burden of proof** under *Bruen*. If the *lower court* applied the **findings of fact** and relevant laws to the **irrefutable evidence** of Knight's **core** 2nd Amendment conduct the *acquisition possession* and public *carrying* of arms for self-defense. A **conclusion of law** would aver that *facially and as-applied* 38 - R.C.N.Y. § 5-25 (d)(4)(i) is unconstitutional.

## (24) **Article III Injury-in-Fact**

**52.** The *Heller* decision ruled that self-defense is the **core** of the 2nd Amendment. The ruling describes having arms "**in case of confrontation**" as the **core** lawful purpose. Then the *confiscation* and *destruction* of Knight's arms that cannot be transferred from his state RPL to his state CL strikes at the **core** of the right. Otherwise what other 2nd Amendment activity could citizens engage in that would be considered "*conduct presumptively protected by the plain text of the 2nd Amendment*?" A taking of personal property (i.e., arms) is an Article III **injury-in-fact** causing Knight **irreparable harm**. **Compl. (p. 05-08 ¶¶ 09-20), (p. 13-14 ¶¶ 33-34), ([p. 17 ¶¶ 42, 43 (a)(b)(c)(d)(e)(f)]), (p. 19 ¶ 48-49)**

**(25)** *Marbury v. Madison*, **U.S. (1803)**

**(a)** The general misconception is that any statute passed by legislators bearing the appearance of law constitutes the law of the land. The U.S. Constitution is the supreme law of the land, and any statute, to be valid, must be in agreement. It is impossible for a law which violates the Constitution to be valid. "All laws which are repugnant to the Constitution are null and void." In so holding, Marshall established the principle of judicial review, (i.e., the power to declare a law unconstitutional). *See*, *Marbury v. Madison*, 5 U.S. (2 Cranch) 137, 174, 176, (1803).

**(26)** **The Takings Clause and Due Process of Law**

**53.** The **Takings** & **Due Process Clauses** state: "*nor be deprived of life, liberty, or property, without **due process of law***." The **Takings Clause** of the 5th Amendment to the U.S. Constitution prohibits taking Knight's private property for public use, without just compensation. This prohibition applies to the states through the 14th Amendment. While the **Takings Clause** is often discussed in the context of land and real estate, it also applies to *personal property* (i.e., arms). **Compl. ([p. 10 ¶ 24 (a)]), (p. 11 ¶ 28), (p. 12-13 ¶¶ 29-33), (p. 17 ¶ 42) (p. 18 ¶ 44-45)**

**54.**   Knight argues that the _confiscation_ or _destruction_ of his or any citizen's lawfully _acquired_ arms is both a physical taking and a regulatory taking. It is a physical taking _see_, **_Horne v. Dep't of Agriculture_**, 576 U.S. 351 (2015). Whereas the rule permanently dispossesses Knight and citizens of physical property (i.e., arms).

**55.**   And it is a regulatory taking _see_, **_Lucas v. South Carolina Coastal Council_**, 505 U.S. 1003 (1992). Because the rule deprives citizens of all beneficial use of their property (i.e., arms). Taking property without just compensation is an Article III **injury-in-fact** that confers standing to those denied.

## 5)   <u>SUMMARY OF THE ARGUMENT</u>

**56.**   The initial inquiry in a 2nd Amendment challenge is whether the plain text covers Knight's desired conduct. The desired conduct is the conduct 38 - R.C.N.Y. § 5-25 (d)(4)(i) prevents Knight from engaging in. The challenged rules here prevent Knight from _acquiring possessing_ and publicly _carrying_ more than **(2)** arms for self-defense. The plain text question, therefore, is whether the 2nd Amendment protects the right to _acquire possess_, and publicly _carry_ arms for self-defense.

**57.** The Supreme Court has twice held that the 2nd Amendment protects the right to _acquire_ arms. The Court's prior holdings are supported by Supreme Court precedent. First, the Supreme Court has determined that "_keep Arms_" in the Amendment's text means to "_have weapons_," and the plain meaning of "_have_" encompasses the act of _acquisition_. Second, the Supreme Court has acknowledged that certain rights are implicit in enumerated guarantees. In the 2nd Amendment context, four Justices have recognized and none have disagreed that firearms training is "_a necessary concomitant_" of the right to _keep and bear_ arms. The Supreme Court and many district courts have recognized, that _acquiring_ a firearm must be "_a necessary concomitant_" as well.

**58.** Because the plain text covers Knight's desired conduct, it becomes the City's _burden_ to justify its regulations with historical tradition. The City must provide distinctly similar historical regulations when addressing a general societal problem that has persisted since the 18th century. The City failed to provide a single historical analogous law limiting how many arms citizens could _acquire possess_ and publicly _carry_ for self-defense. Nor did the City provide any founding era regulations.

### (27)  The Plain Text Covers the Right to Acquire Arms

**59.**    The City characterizes Knight's desired conduct as the right to *acquire possess* and publicly *carry* more than **(2)** arms for self-defense. In truth, Knight **intends** to *acquire* and *possess* more than **(2)** arms on his state CL. But in any event, the City places more pressure on the plain text analysis than it can bear. The adjective "*plain*" is essential.

**60.**    **If the 2ⁿᵈ Amendment protects the act of *acquiring* arms, nothing in the plain text provides a basis to set a limitation on when, where, or how many arms can be *acquired*.** Rather, it is only through historical analysis that limitations on the conduct can be established.

**61.**    In *Bruen*, the Supreme Court only considered whether the plain text covers "*carrying handguns publicly for self-defense*" 597 U.S. at 32. The Court considered potential limitations (e.g., whether the manner of *carry* or the intent for which one can *carry* may be restricted in its historical analysis, 597 U.S. at 38). The plain text question here is whether the 2ⁿᵈ Amendment protects the right to *acquire* arms. Any limitation including whether the number of arms *acquired* can be capped at **(2)** per state CL may be considered only in the historical analysis.

**62.** The Supreme Court has already held that the 2nd Amendment protects the right to *acquire* arms: "*prohibitions on the sale of ammunition do not fall outside the historical understanding of the scope of the 2nd Amendment right*" because "*the right to possess firearms for protection implies a corresponding right to obtain the bullets necessary to use them.*" *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014), abrogated on other grounds by *Bruen*, 597 U.S. at 19. Indeed, the "*2nd Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms*." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc) ([quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)]).

**(28)** **Right to Keep Arms Includes Right to Acquire**

**(a)** *New York State Rifle & Pistol Ass'n., Inc. v. City of New York*, 140 S. Ct. 1525, 1541 (2020) (Alito, J., joined by Gorsuch and Thomas, J.J., dissenting); *id*. at 1527 (Kavanaugh, J., concurring) (expressing "*agree[ment] with Justice Alito's general analysis of Heller*"); *see* also *Oakland Tactical Supply, LLC v. Howell Twp., Michigan*, No. 23-1179, 2024 WL 2795571, at *3 (6th Cir. May 31, 2024) ("*[A]t least some [firearms] training is protected . . . because it is a necessary corollary to the right defined in Heller. Four Justices seemingly endorsed this view[.]*"). Another "*necessary concomitant*" of the right to *keep and bear* arms is the right to *acquire* arms.

**63.**   *Constitutional rights thus implicitly protect those closely related acts necessary to their exercise.* The right to *keep and bear* arms, for example, "*implies a corresponding right to obtain the bullets necessary to use them,*" *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (CA9 2014) (internal quotation marks omitted). Without protection for th[is] closely related right[], the 2nd Amendment would be toothless. *Luis v. U.S.* 578 U.S. 5, 26 (2016) (Thomas, J., concurring).

**64.**   In a case *Heller* cited thrice approvingly, 554 U.S. at 608, 614, 629, the Tennessee Supreme Court held that "*[t]he right to keep arms, necessarily involves the right to purchase them,*" *Andrews v. State, 50 Tenn*,. 165, 178 (1871). More recently, the 3rd Circuit held that the 2nd Amendment protects the right to purchase firearms. *Drummond   v. Robinson Twp*., 9 F.4th 217, 226–29 (3d Cir. 2021). Numerous district courts have also recognized the right to *acquire* arms. Similarly, "*[t]he 1st Amendment guarantee of a free press . . . implies a right to buy the inks and paper necessary for printing newspapers*." *Oakland Tactical Supply, LLC*, 2024 WL 2795571, at *10 (Kethledge, J., dissenting) ([citing *Minneapolis Star and Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582–83 (1983)]).

**65.** And "*the 1st Amendment 'right to speak would be largely ineffective if it did not include the right to engage in financial transactions that are the incidents of its exercise*.'" *Id.* (quoting **McConnell v. Federal Election Com'n**, 540 U.S. 93, 252 (2003) (Scalia, J., concurring in part)). Because "*the Second Amendment right . . . to acquire a firearm . . . is implicated by . . . laws directly or functionally banning firearm sales*," **Kole v. Vill. of Norridge**, No. 11-cv-3871, 2017 WL 5128989, at *21 (N.D. Ill. Nov. 6, 2017).

**66.** "*The Constitution presumptively protects*" Knight's desired conduct the City must justify restricting a state CL to *acquiring* and *possessing* only **(2)** arms with historical tradition, *Bruen*, 597 U.S. at 24.

## (29) Discounting The Law

**67.** Public confidence in the performance and impartiality of the courts is maintained only when judges rigorously follow the law. The basic idea, of course, is that judges should interpret statutes and other laws as they find them and apply those laws faithfully according to their plain meaning. The discretion to establish **public policy** is generally committed to legislative bodies, not to the courts.

**68.** Thus, to avoid reading their own beliefs and values into the law, judges are expected to apply the law as written (i.e., _Bruen_). Put another way, it is not the province of the judges to second-guess the wisdom of the Supreme Court and decide cases based on what the judges believe the law should be. No reasonable jurist would seriously contend otherwise.

**69.** Accordingly, few things attract the attention of this Court more quickly than the _lower court's_ failure to correctly identify and apply settled legal principles (i.e., _Bruen_). This Court should not fully trust the work of the _lower court_ demonstrating a pattern of failing to follow the law (i.e., _Bruen_). Or to put it differently, the _lower court_ undermined its credibility with this Court by repeatedly misstating the law albeit inadvertently or by not adhering to relevant legal standards (i.e., stare decisis). Once a judicial reputation is diminished in this regard, it is not easily rehabilitated.

**(30) <u>Misstating Key Facts</u>**

**70.** <u>*Lower courts*</u> are, of course, primarily fact-finding courts. Thus, it is no small matter when a <u>*lower court*</u> misapprehends or misconstrues crucial facts. This Court can readily identify <u>*lower courts*</u> in their jurisdictions that are careful when making factual determinations and those that are not. Naturally, decisions by judges in the latter category tend to be reviewed, consciously or unconsciously, more closely on appeal. Cases are not decided in a factual vacuum and, generally speaking, the law has little meaning outside the factual context in which it has been applied.

**71.** Accordingly, the difficulty attendant to a judge's misapprehension of even one key fact is that it can skew the resulting legal analysis. Indeed, such a mistake can be outcome-determinative. Thus, to state the obvious, factual assertions in a court's decision must be completely accurate. <u>Courts, both *lower* and appellate, should take a dim view of the NYC Law Department's lawyers who incorrectly present the facts, cite cases that have little to do with the proposition for which they are cited, take testimony out of context, or exaggerate the proof</u>. The same applies to judges.

**72.** **In short, carelessness with the facts will attract the attention of a higher court**. A judge's credibility and reputation are hard-earned assets, and misstating the essential facts of the case or the law, even if unintentional, undermines both. To avoid this pitfall, judges, regardless of court, must be meticulously accurate in describing the factual record. When considering the lapses in the professional conduct of an NYC Law Department attorney, a reputation "*for intellectual and ethical integrity*" is either the "*greatest asset*" or "*worst enemy*" of anyone working in the NYC Law Department, so "*treat[ing] . . . every daily task as if your career will be judged on it*" should be the standard that rings as true for the members of the trial and appellate benches as for the members of the bar.

**73.** That is, *lower court* judges should base their decisions on evidence adduced by the parties, as opposed to formulating a decision based, in whole or in part, on information that they obtain independently. As noted, appellate courts are put in an awkward position [when] evidence obtained through private inquiry or observation, as well as its probative value, is not shown in the record, making an evaluation of the information on appeal difficult, if not impossible.

**(31) <u>Making The Simple Difficult</u>**

**74.** The <u>*lower court*</u> should have fully developed the basis for the decision, leaving no gaps in the analysis for the appellate judges to fall through. Just as the NYC Law Department lawyers are expected to blend the law with the facts in their briefs, judges should do the same in their decisions. Being too conclusory is a common problem, placing the appellate judges in the difficult position of having to infer the rationale for the decision.

**6) <u>ARGUMENT</u>**

**75.** Knight is an African-American, and thus one of "<u>*the people*</u>" whom the 2nd Amendment protects. The plain text and historically understood meaning therefore presumptively guarantee citizen's rights to publicly <u>*carry*</u> arms for self-defense. The City failed to rebut that presumption by demonstrating that permanently depriving citizens of this fundamental right by only allowing the transfer of **(2)** arms from their state RPL to their state CL while **<u>confiscating</u>** any additional arms for **<u>destruction</u>**, and only allowing citizens with a state CL to <u>*acquire*</u> and <u>*possess*</u> **(2)** arms to publicly <u>*carry*</u> for self-defense into <u>*perpetuity*</u>. Is otherwise consistent with our Nation's history of arms regulations.

**76.** Whereas, *"to confine the right to 'bear' arms to the home would nullify half of the Second Amendment's operative protections*." The City continues to issue state RPLs as a **cash grab** to supplement its budget. The NYPD is on track to rake in **$6.3 million in license application fees this fiscal year**, which started July 1, 2023, and runs through June 30. Regardless of whether it approves or rejects an application, the NYPD LD requires applicants to pay processing fees that cost **$340 per license**.

**(32)** ***U.S. v. Stambaugh*, U.S. (2023)**

**(a)** A historical analogue to support constitutional applications of § 922(n) might well exist, but the United States hasn't pointed to it. And because it is the United States' burden to demonstrate that laws like § 922(n) are "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," that failure is fatal. *U.S. v. Stambaugh*, No. CR-22-218-PRW-2, (W.D. Okla. Jan. 12, 2023).

**77.** If the State refuses to adopt **constitutional carry**, state RPLs must be **enjoined** and state CLs must allow for the *acquisition and possession* of all arms to be publicly *carried* for self-defense. A state CL prohibits the *acquisition possession*, and public *carrying* of more than **(2)** arms for self-defense. Something the Supreme Court said directly contradicts the central holding of *Heller* which states the 2nd Amendment guarantees the individual right to *possess* arms for self-defense.

**(33)** *MSI, Inc. v. Moore*, **(2023)**

**(a)**   Maryland's law fails the new *Bruen* test. As we will explain, Plaintiffs have shown that Maryland's handgun-licensure law regulates a course of conduct protected by the Second Amendment, and Maryland has not established that the law is consistent with our Nation's historical tradition. *See*, ***Maryland Shall Issue, Inc. v. Moore***, No. 21-2017 (2023).

**78.**   *Bruen* requires no less skepticism here, where the challenged rules of the City are even younger. Although Knight **intends** to cancel his state RPL and transfer all **(4)** of his arms to his state CL to avoid their **confiscation** and **destruction** which *facially and as-applied* violates the 2nd and 14th Amendments. The City still averred that Knight's conduct of *acquiring possessing* and publicly *carrying* arms for self-defense "*is not* **'core'** *2nd Amendment conduct, and it doesn't implicate the 2nd Amendment*."

**(34)** *Bruen's*: **Plain Text**

**79.**   *Bruen* held that "*when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct*." A restriction (i.e., [38 - R.C.N.Y. § 5-25 (d)(4)(i)]) may be found valid only if the government demonstrates that it "*is consistent with this Nation's historical tradition of firearm regulation*."

### (35)  Rights: Implicit in Enumerated Guarantees

**80.**  The Supreme Court has long held that the constitutional text also encompasses necessarily included matters that are required for the exercise of a right and thus includes rights "*implicit in enumerated guarantees*." *See*, **_Richmond Newspapers Inc. v. Virginia_**, 448 U.S. 555 (1980). The right to *keep and bear* arms thus presupposes the right to *acquire* a firearm, obtain ammunition, train, and make a firearm operable. *See*, **_Luis v. U.S._** 578 U.S. 5, 26 (2016) (Thomas, J., concurring in judgment); *see*, **_District of Columbia et al. v. Heller_**, 554 U.S. 570 (2008) (government cannot require firearms to be made inoperable). The *lower court* was not free to interpret the terms of the 2nd Amendment **de novo** or to insist on a wooden literalism that would empty the 2nd Amendment of practical meaning.

**81.**  Since the holdings in *Heller* and *Bruen*, some *lower courts* have inappropriately considered subjects that are properly part of the *historical analysis* as part of the *textual analysis*. The *lower court* has also taken a narrow view of the text that does not include related acts necessary to the exercise of the right to publicly *carry* arms for self-defense, for example, the *lower court* avers:

**I.** A state RPL that prohibits the _bearing_ of any arms for any reason whatsoever does not prohibit _bearing_ arms.

**II.** A state CL that limits the _acquisition possession, and carrying_ of arms to only **(2)** doesn't _prohibit_ the _acquisition possession, and bearing_ of additional arms.

**(36)** _Gibbons v. Ogden_, **U.S. (1824)**

**(a)** Under the Supremacy Clause, any state law that conflicts with a federal law is preempted. Conflict arises when it is impossible to comply with both the state and federal regulations or when the state law interposes [(to put up (between)] an obstacle to the achievement of Congress's discernible objectives. _See_, _**Gibbons v. Ogden**_, 22 U.S. 1 (1824). **Ex 08**

**82.** It is unconstitutional to require citizens to **pay a fee of $340** for a state RPL that prohibits their right to _bear_ arms. Because it is a "_restricted type of license_" that **de facto** prohibits _carrying_ any arms and "_confines the right to 'bear' arms to the home nullifying half of the 2ⁿᵈ Amendment's operative protections_" in violation of the holding in _Bruen_.

**(37)** **New York State Civil Rights Law - CVR § 4**

**(a)** A well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms cannot be infringed. **Compl. (p. 13 ¶ 33), (p. 17 ¶ 42), (p. 20 ¶¶ 52-55)**

**(38)** **Second Amendment**

**(a)** A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed. **Compl. p. 16 - ¶ 40 (13) a)**

**83.** <u>N.Y.S. Civil Rights Law</u> - CVR § 4 states; "The right of the people to *keep and bear arms cannot be infringed*." And the 2nd Amendment states that "The right of the people to *keep and bear Arms, shall not be infringed*." However, neither states that "*the right of the people to keep* **(OR)** *bear arms cannot or shall not be infringed*."

**84.** The City requires citizens to <u>pay a fee of **$340**</u> to apply for a state RPL that **prohibits** the *acquisition and possession,* of any arms to publicly *carry* for self-defense which *facially and as-applied* is unconstitutional. And <u>pay a fee of **$340**</u> for a separate but not equal state CL that only **allows** the *acquisition possession*, and public *carrying* of no more than **(2)** arms for self-defense. As a **matter of law**, a state RPL and a state CL cannot **coexist** because they are **mutually exclusive**.

### (39) How to Apply SCOTUS *Bruen* Methodology

**(a)** Please review these videos to receive detailed explanations of how lawyers and judges should apply *Bruen's* methodology to these legal matters, and discuss the proper understanding of the *Bruen* methodology in resolving 2nd Amendment challenges to the right to *acquire possess,* and publicly *carry* arms for self-defense. Constitutional Attorney, Mark Smith.

**(a)** <u>Text 1st, Historical Analogue Laws 2nd</u>

**(b)** <u>How to Apply SCOTUS Bruen Methodology (P I)</u>

**(c)** <u>How to Apply SCOTUS Bruen Methodology (P II)</u>

**(40)** **Report & Recommendation - Mag. Figueredo, V**

**(a)** First, the City's rule **places no restrictions** on an individual's ability to **carry** a handgun in public for self-defense. **The rule does not regulate the acquisition of a gun**. Nor does the rule speak to who can obtain a carry license or what must be shown by a person to obtain such a license. **What's more, the rule does not limit the number of handguns that can be carried on a person at one time**. **[Ex 03] | p. 11 - ¶ 1**

**85.** How could the _lower court_ aver that "_the rule places no restrictions on an individual's ability to carry arms in public for self-defense._" Or state that "**The rule does not regulate the acquisition of a gun**." When 38 - R.C.N.Y. § 5-25 (a) states; "**The following are the rules concerning handgun acquisition**." This is a **finding of fact**. Any prohibition on the _acquisition and possession_ of arms to publicly _carry_ for self-defense strikes at the **core** of the right. Violates the 2nd and 14th Amendments and is _facially and as-applied_ unconstitutional.

**(a)** Knight possesses **(14)** concealed carry licenses from the states of AZ, CT, DC, FL, MA, ME, MD, NH, NJ, NY, PA, RI, UT, and VA and knows of no other jurisdictions that have a **restricted** state RPL to _keep_ arms and a separate but not equal **restricted** state CL to _bear_ arms. Knight's complaint confirms the restrictions a state RPL places on _bearing_ arms and state CL places on _acquiring possessing_, and publicly _carrying_ more than **(2)** arms for self-defense into _perpetuity_.

**86.** In *Bruen*, Justice Thomas wrote that the 2nd Amendment issued "**an unqualified command**" that an individual's right to *acquire possess*, and publicly *carry* arms for self-defense was to be protected. So *confiscating* the arms that remain on Knight's state RPL **prohibits** his *possession* of those arms. This Article III **injury-in-fact** causes Knight **irreparable harm** and is *facially and as-applied* unconstitutional.

**(41) Transcript: The City**

**(a)** These regulations just **control** how many you can list on each license. You can have two on a carry, one of which can be carried in public and one of which, obviously, can be used to defend yourself in public. And you can have many on your premise residence, which you can use then to defend yourself in the home. And you can also then, **with the PD's permission**, switch guns that are listed on your premise from your premise to your carry, and vice versa, if you want as well. **[Ex 02] | p. 10: 21-25 | p. 11: 1-5**

**87.** The City stated, "*these regulations just **control** how many you can list on each license*." The City failed to mention that you can only *acquire possess,* and publicly *carry* arms that are listed on your state CL. Citizens who possess a state CL are limited to only *acquiring and possessing* **(2)** arms into *perpetuity* in violation of the 2nd Amendment right to *keep and bear* arms. Restricting the right to *acquire* and *possess* arms for self-defense is *facially and as-applied* unconstitutional. See, § 5-22 (a)(5)(7)(8) Conditions of Issuance. **LINK**

**(42)** <u>**Second Amendment Violations**</u>

**88.** According to the City once they have <u>*allowed*</u> citizens to <u>*acquire possess, and carry*</u> **(2)** arms with a state CL. The <u>*acquisition*</u> of additional arms is conduct no longer protected by the plain text of the 2ⁿᵈ Amendment. <u>**The right to *bear* arms in the City is not a right, but a privilege granted through the licensing and regulation of that right**</u>.

**(43)** <u>***Shuttlesworth v. Birmingham***, **U.S. (1969)**</u>

**(a)** "Whereas if a state converts a right into a privilege, the citizen can ignore the license and fee and engage in the right (liberty) with impunity." *See*, <u>***Shuttlesworth v. Birmingham***</u>, 394 U.S. 147 (1969). **Ex 09 | Compl. p. 09 - ¶ 22**

**89.** The City is attempting to circumvent <u>*Heller*</u> and <u>*Bruen*</u> by creating administrative hurdles as if the 2ⁿᵈ Amendment is a <u>*second-class right*</u>. The right to <u>*bear*</u> arms is not limited to only <u>*acquiring and possessing*</u> **(2)** arms to publicly <u>*carry*</u> for self-defense. No more than the 1ˢᵗ Amendment allows the City to limit citizens' freedom of speech to only speaking **(2)** times which is <u>*facially and as-applied*</u> unconstitutional.

**(44)** <u>***Murdock v. Pennsylvania***, **U.S. (1943)**</u>

**(a)** "No state shall convert a liberty into a license, and charge a fee, therefore." *See*, <u>***Murdock v. Pennsylvania***</u>, 319 U.S. 105 (1943). **Ex 10 | Compl. p. 15 - ¶ 40**

**90.** The City is _facially and as-applied_ violating the 2nd Amendment rights of **8.5 million** citizens by systemically litigating the precedents set in _Heller_ and _Bruen_ fighting each 2nd Amendment restriction on a case-by-case basis. As a **matter of law**, the City should remove every 2nd Amendment restriction in Title 38 - R.C.N.Y. and stop wasting this Court's time by filing a frivolous **motion to dismiss** Knight's _well-pleaded factual allegations_.

### (45) _Schneider v. State_, U.S. (1939)

**(a)** It is suggested that the Los Angeles and Worcester ordinances are valid because their operation is limited to streets and alleys, and leaves persons free to distribute printed matter in other public places. But, as we have said, the streets are natural and proper places for the dissemination of information and opinion, and <u>one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place</u>. _Schneider v. State_, 308 U.S. 147 (1939).

### (46) _United States v. Stevens_, U.S. (2010)

**(a)** "No set of circumstances exists under which [the statute] would be valid" _see_, _U.S. v. Stevens_, 559 U.S. 460 (2010).

**(47)** *Koons v. Platkin*, **(2023)**

**(a)**   In conclusion, the Second Amendment's "right to bear arms in public for self-defense is not a 'second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 142 S. Ct. at 2156 (quoting *McDonald*, 561 U.S. at 780). That does not mean, however, that the right is "unlimited." *Heller*, 554 U.S. at 626. The Constitution leaves the States "some measures" to combat handgun violence. *Id*. at 636. But what the Second Amendment prohibits the States from doing, and what the State of New Jersey has done here with much of Chapter 131, is to "prevent[] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Bruen*, 142 S. Ct. at 2156. That is plainly unconstitutional. *See*, *Koons v. Platkin*, Civil No. 22-7464 (2023).

**(48)** **42 U.S.C. § 1983**

**(a)**   The City is subjecting Knight and citizens to the deprivation of their rights, privileges, and immunities secured by the Constitution and laws, and shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**(49)** **Report & Recommendation: Mag. Figueredo, V**

**(a)**   Although Knight contends that there is no "need for two licenses" (see 11/13/23 Tr. at 19-20, 36-39, 46-47, 54-55), **nothing in *Bruen*, *Heller*, or *McDonald* prevent the City from requiring gun owners to obtain multiple licenses, one for the home and one to carry in public**, so long as the licensing regime does not allow for the denial of a license "based on a perceived lack of need or suitability." *Bruen*, 142 S. Ct. at 2123. And, here, the challenged rule does not even impose a license requirement or pertain to the requirements for issuance of a carry or residence license. **[Ex 03] | p. 12 - ¶ 01**

**(b)** **Justice Thomas (*Bruen*):** We have little difficulty concluding that it does. **Nothing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms**. As we explained in *Heller*, the "textual elements" of the Second Amendment's operative clause— "the right of the people to keep and bear Arms, shall not be infringed"—"guarantee the individual right to possess and carry weapons in case of confrontation."

91.    Mag. Judge V. Figueredo averred that "*nothing in Bruen, Heller, or McDonald prevent the city from requiring gun owners to obtain multiple licenses, one for the home and one to carry in public*." However, according to Justice Thomas, this is prohibited by both *Heller* and *Bruen*.

**(a)** **Justice Thomas (*Bruen*):** Applying that new and more stringent standard to the New York proper-cause requirement, Justice Thomas found that the challengers' desire to carry a handgun in public for self-defense fell squarely within the conduct protected by the 2nd Amendment. **The amendment's text does not distinguish between gun rights in the home and gun rights in public places**, Thomas observed. Indeed, he suggested, the Second Amendment's reference to the right to "*bear*" arms most naturally refers to the right to *carry* a gun outside the home.

**(50)** **Legal Standard - Rule 12(b)(1)**

**(a)**    In reviewing a motion to dismiss under Rule 12(b)(1), courts "*draw all facts which [are] assume[d] to be true unless contradicted by more specific allegations or documentary evidence from the complaint and from the exhibits attached thereto*," unless the defendant "*place[s] jurisdictional facts in dispute*." ***Amidax Trading Grp. v. S.W.I.F.T. SCRL***, 671 F.3d 140, 145 (2d Cir. 2013).

**92.** In reviewing the allegations, courts "*construe all reasonable inferences to be drawn from those factual allegations in [the plaintiff's] favor*." *Id.* "*At the pleading stage a plaintiff must 'allege facts that affirmatively and plausibly suggest that [he] has standing to sue*.'" *Vengalettore v. Cornel Univ.*, 36 F.4th 87, 112 (2d Cir. 2022) (quoting *Amidax*, 671 F.3d at 145). Absent a factual showing otherwise, a plaintiff's pleading-stage burden is satisfied by allegations demonstrating that jurisdiction exists. *See, Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

**93.** To determine whether a firearm restriction is constitutional, the Court in *Bruen* explained that "*the standard for applying the 2nd Amendment is as follows: When the 2nd Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation*." 597 U.S. at 24. *Bruen* has already established that the 2nd Amendment covers Knight's proposed conduct here the *acquisition possession* and public *carrying* of arms for self-defense and other lawful purposes. *Id.* at 31–32.

**94.** As such, the 2ⁿᵈ Amendment "*presumptively protects*" Knight's right to *carry* arms. It is thus the City's burden to "*affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.*" *Id.* at 19; *see also id.* at 60 **("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden")** *Bruen*. The City cannot provide any laws analogous to the ratification of the 2ⁿᵈ Amendment in 1791 to support its **motion to dismiss**.

## 7) STANDARD OF REVIEW

**(a)** This Court reviews **de novo** a district court's granting of a Rule 12(b)(6) motion to dismiss for failure to state a claim for relief.

### (51) Article III Constitutional Standing Doctrine

**(a)** Standing relates to this Court's constitutional power to hear and decide a case and, therefore, implicates subject matter jurisdiction. *See*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, "*a plaintiff must show* **(1)** *an 'injury in fact,'* **(2)** *a sufficient 'causal connection between the injury and the conduct complained of,' and* **(3)** *a 'likel[ihood]' that the injury 'will be redressed by a favorable decision,*'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

**(52)  *U.S. v. Rahimi*, U.S. (2024)**

**(a)**    In *Heller*, our inquiry into the scope of the right began with "*constitutional text and history*." *Bruen*, 597 U. S., at 22. In *Bruen*, we directed courts to examine our "*historical tradition of firearm regulation*" to help delineate the contours of the right. *Id.*, at 17. We explained that if a challenged regulation fits within that tradition, it is lawful under the Second Amendment. We also clarified that when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to "*justify its regulation*." *Id.*, at 24.

**(b)**    Nevertheless, some courts have misunderstood the methodology of our recent Second Amendment cases. These precedents were not meant to suggest a law trapped in amber. As we explained in *Heller*, for example, the reach of the Second Amendment is not limited only to those arms that were in existence at the founding. 554 U. S., at 582. Rather, it "*extends, prima facie, to all instruments that constitute bearable arms, even those that were not [yet] in existence*." *Ibid.* By that same logic, the Second Amendment permits more than just those regulations identical to ones that could be found in 1791. Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers.

**(c)**    As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. 597 U. S., at 26–31. A court must ascertain whether the new law is "*relevantly similar*" to laws that our tradition is understood to permit, "*apply[ing] faithfully the balance struck by the founding generation to modern circumstances*." *Id.*, at 29, and n. 7. Discerning and developing the law in this way is "*a commonplace task for any lawyer or judge*." *Id.*, at 28.

**(d)** Why and how the regulation burdens the right are central to this inquiry. *Id.*, at 29. For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding. And when a challenged regulation does not precisely match its historical precursors, "*it still may be analogous enough to pass constitutional muster.*" *Id.*, at 30. The law must comport with the principles underlying the Second Amendment, but it need not be a "*dead ringer*" or a "*historical twin.*" *Ibid.* (emphasis deleted). *See, U.S. v. Rahimi*, 602 U.S. ___ (2024).

**(53)** __ORDER: Dist. Judge V. Caproni__

**(a)** **IT IS HEREBY ORDERED** that the R&R at docket entry 40 is adopted in full, Defendants' motion to dismiss is GRANTED, and Mr. Knight's claims under the Fifth and Fourteenth Amendments are **DISMISSED** and his claims under the Second Amendment, under Section 4, and regarding pre-emption are **DISMISSED** with prejudice. **[Ex 05]**

**(54)** __Error of Law: The Strongest Ground for Appeal__

**95.** An **error of law** means that the judge(s) in this case applied the wrong "*legal standard*" to the facts of this case. This occurred because the *lower court* did not follow *Bruen's* test for determining if the regulations were consistent with the Nation's historical tradition of firearm regulations *as-applied* to this case's circumstances.

**96.** An **error of law** is the strongest type of ground for appeal because this Court in reviewing this case does not have to give any weight to what the _lower court_ did. As a **matter of law**, this Court can look at the holding in _Bruen_ the law that was supposed to be applied, and determine that the decision was **clearly erroneous**.

**(55)** ***Conley v. Gibson*, U.S. (1957)**

**(a)** A complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *See*, **_Conley v. Gibson_**, 355 U.S. 41 (1957); **_Gould v. Artisoft, Inc_**., 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f).

## 8) **CONCLUSION**

**97.** Knight respectfully asks this Court to issue a decision, and opinion explaining its rationale for **VACATING** and **REVERSING** the **clearly erroneous** judgment of the _lower court_.

**98.** In the alternative, a remand to the _lower court_ to conduct a full historical analysis would be the next best option for further proceedings _not inconsistent_ with the precedents set by the Supreme Court in _Heller_, and _Bruen_. Thank you for your kind consideration in this urgent matter.

Dated:       July 30, 2024                    Respectfully submitted,
             New York, New York


                                              **/s/ Cavalier D. Knight**
                                              _____
                                              Cavalier D. Knight
                                              511 W 165th St Ste 627
                                              New York, NY 10032-0634
                                              +1 (646) 580-7801
                                              info@cavalierknight.com

**9)** **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with Fed. R. App. P. 32(a)(7)(B). The brief pp. 01 - 57, contains approximately 12,988 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). The brief does not exceed 13,000 words.

Dated:      July 30, 2024
               New York, New York

Respectfully submitted,


**/s/ Cavalier D. Knight**

Cavalier D. Knight
511 W 165th St Ste 627
New York, NY 10032-0634
+1 (646) 580-7801
info@cavalierknight.com

## 10)  **<u>CERTIFICATE OF SERVICE</u>**

I certify that this document was served on all defendants via the

ACMS system on July 30, 2024.

Dated:      July 30, 2024                          Respectfully submitted,
            New York, New York


                                                   **/s/ Cavalier D. Knight**
                                                   _____
                                                   Cavalier D. Knight
                                                   511 W 165th St Ste 627
                                                   New York, NY 10032-0634
                                                   +1 (646) 580-7801
                                                   info@cavalierknight.com